UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE | CASE NO. 03-18831 |
| **PETER FRANK VIZZINI, JR. & LORETTA CAUVIN VIZZINI,** *Debtor* | Section "B" CHAPTER 7 |
| **LORI BARCELONA** *Plaintiff* | |
| **VERSUS** | ADVERSARY NO. 04-1041 |
| **PETER FRANK VIZZINI, JR. & LORETTA CAUVIN VIZZINI** *Defendant* | |

## MEMORANDUM OPINION

This adversary came before the court on December 6, 2004 as a trial on the complaint of Lori Barcelona, c/o Michael Stag (hereinafter "Barcelona" or "plaintiff") objecting to the dischargability of a debt under 11 USC §§ 523(a)(2)(A), 523(a)(3), 523(a)(4), and 523(a)(6). Debtors have answered plaintiffs' complaints with a general denial of all claims.

For the reasons explained below, the court will enter a judgment granting debtors' discharge and dismissing plaintiffs' complaint.

**I. Background**

Debtors own and operate Vizzini Printing Service, a sole proprietorship, located in Metairie, Louisiana. Lori Barcelona was employed by debtors to assist them in the daily operations of their printing business. On April 6, 2000, debtors were in the process of having their previous place of business, at 6035 Chef Menteur Highway, retiled by Ellerbe Enterprises, Inc (hereinafter "Ellerbe"). Barcelona was asked to go to the second floor of the debtor's premises and tell the contractor Ellerbe that he had a telephone call. While climbing the stairs, Barcelona slipped on some debris left by Ellerbe and fell, injuring her knees, lower spine, wrist, hip and buttocks. Debtors did not maintain worker's compensation insurance for their employees and were unable to cover the costs of Barcelona's injuries. For this reason, Barcelona brought an action before the Office of Worker's Compensation and received a judgment of $75,291.90 on October 8, 2003.

Debtors filed a petition under Chapter 7 of the Bankruptcy Code[1] on November 12, 2003. Debtors filed schedules on November 11, 2003 that were amended on February 9, 2004 and again on April 1, 2004. The Trustee in bankruptcy abandoned all property of the estate after determining that no

---

[1] 11 USC 701-728.

equity existed. On March 2, 2004, plaintiff filed a complaint objecting to the discharge of the worker's compensation judgment.

**II. Plaintiff's Arguments and Defendant's Responses**

Plaintiff asserts that the debtors used the bankruptcy process fraudulently in an attempt to avoid paying Barcelona's worker's compensation claim. Plaintiff asserts that the debtors 1) made fraudulent representations to Barcelona, in violation of §523(a)(2)(A), concerning whether worker's compensation insurance would be available to her; 2) failed to disclose creditors on their schedules to the detriment of Barcelona and in contravention of §523(a)(3); 3) violated a fiduciary duty to Barcelona to maintain worker's compensation insurance, in violation of § 523(a)(4); and, 4) caused a willful and malicious injury under § 523(a)(6) by failing to maintain worker's compensation insurance.

The defendants concede that they did not have worker's compensation insurance and acknowledge that they were aware of the Louisiana law that requires employers to maintain such insurance. Debtors contend, however, that their failure to buy worker's compensation insurance does not constitute the type of infraction sufficient to deny discharge of the worker's compensation claim under the Bankruptcy Code.

**III.   Law and Analysis**

A core policy of bankruptcy law is to provide the debtor with a fresh

start by affording a discharge of most of his or her debts.[2] This oft described fresh start gives the debtor an opportunity to begin a new economic life without the burdens of pre-petition debt.[3] Accordingly, courts construe exceptions to discharge under 11 USC §523(a) narrowly.[4]

### A. Fraudulent Misrepresentations Under § 523(a)(2)(A)

Section 523(a)(2)(A) provides that a debtor will not receive a discharge from a debt "for money, property, services, . . . to the extent obtained, by … (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition".[5] The fraud or false representations referred to in §523(a)(2)(A) require "moral turpitude or intentional wrong" as opposed to fraudulent acts that are "implied in law [and] exist without imputation of bad faith."[6] In order to deny discharge of a debt under § 523(a)(2)(A), the plaintiff must prove that: (1) debtors made representations; (2) debtors knew the representations were false at the time they were made; (3) debtors made the representations with the intent to deceive plaintiffs; (4) plaintiff relied on these misrepresentations; (5) plaintiff's injury was sustained as a proximate

---

[2] *In re Tran*, 151 F.3d 339, 342 (5th Cir. 1998).
[3] *Id.*
[4] *Id.*; *In re Angelle*, 610 F.2d 1335,1339 (5th Cir. 1980).
[5] 11 USC § 523(a)(2)(A).
[6] *In re Chavez*, 140 B.R. 413, 419 (Bankr. W.D. Tex 1992);3 *Collier on Bankruptcy* ¶ 523.08 at 523-46 (15th ed. 1996).

result of the representations having been made by debtors.[7] Stated another way, the plaintiff must prove "(1) [that debtors made a] knowing and fraudulent falsehood, (2) describing past or current facts", and (3) that plaintiffs relied upon this false representation.[8]

Plaintiff's proof falters on the very first requirement, as there was no evidence that the debtors made any representations to the plaintiff as to worker's compensation. Under cross examination, Mr. Vizzini unequivocally testified that he never – during either of the two different times the plaintiff was employed by debtors – represented that she was covered by workers compensation. Mrs. Vizzini's testimony was silent on this subject. Significantly, the plaintiff testified that the subject of worker's compensation was not discussed either time when she was hired. Plaintiff did testify, however, that she was familiar with worker's compensation requirements because she had owned two businesses herself and therefore she assumed workers compensation insurance was in place.

Plaintiff alleges that the fraudulent representations occurred during the employment negotiations between Barcelona and the debtors. The plaintiff argues that, during the employment negotiations, debtors either had an affirmative duty to inform Lori Barcelona about their non-compliance with

---

[7] *In re Bercier*, 934 F.2d 689, 692 (5th Cir. 1991); *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995).

[8] *In re Allison*, 960 F.2d 481, 483 (5th Cir.1992).

-5-

La. R.S. 23:1168 or that the debtors' silence was a misrepresentation through conduct that amounted to an assertion.

In this case, plaintiff does not suggest that debtors made explicit fraudulent representations to Barcelona. Instead she argues that debtors had a responsibility to inform her that they did not maintain workers compensation insurance and that this omission fraudulently induced Ms. Barcelona to accept a job with debtors. There are two insurmountable problems with the plaintiff's arguments: 1) plaintiff has failed to show an affirmative misrepresentation or conduct amounting to an assertion,[9] and 2) plaintiff has failed to show that her reliance upon the debtors' misrepresentation was the proximate cause of her injuries.

Plaintiffs argue that debtors' conduct was such that it amounted to an misrepresentation. Although conduct can suffice as a fraudulent representation, the conduct alleged here does not rise to the level required to show fraudulent intent.[10] Case law provides that conduct may be treated as an assertion where the debtor's intent can easily be inferred from the debtor's act.[11] This most commonly occurs when a heavily indebted debtor uses a credit card to pay for a purchase.[12] Courts have allowed the inference

---

[9] *See* text at p. 5 *supra*.
[10] RESTATEMENT (SECOND) OF TORTS, §§ 550, 551, 525; *In re Mercer*, 246 F.3d 391, 404-07 (5th Cir. 2001).
[11] *In re Mercer*, 246 F.3d at 404.
[12] *Id.*

that this act of purchasing goods with a credit card was a representation that the debtor would repay the credit card issuer for the charges.[13] In these cases, however, there is a pre-existing contractual relationship between the parties concerning the act in question. In the present case, Barcelona and the debtors had no pre-existing contractual relationship before the parties agreed on the terms of Barcelona's employment. The mere fact that the debtors employed Barcelona, without more, is insufficient for one to infer a representation that the debtors' maintained worker's compensation insurance.

In addition, plaintiff has failed to demonstrate that the debtors had an affirmative duty to inform Lori Barcelona that she was not covered by worker's compensation. La R.S. 23:1168 requires employers to carry workers compensation insurance, but it neither creates a trust-like relationship between the employer and employee nor requires employers to make statements concerning compliance with this law. Instead, La R.S. 23:1168 makes it clear that employers are required to maintain workers compensation insurance and provides employees with a cause of action if their employer fails to comply. Thus, plaintiff's reliance on this statute is misplaced.

---

[13] *Id.* at 404-05.

-7-

Plaintiff has failed to show that debtors' non-maintenance of workers compensation insurance was the proximate cause of Barcelona's injuries. In order to succeed on a §523(a)(2)(A) objection, the plaintiff must demonstrate that the debtor's act was the proximate cause of the plaintiff's injury.[14] Proximate cause is a "cause that directly produces an event and without which the event would not have occurred."[15] The debtors' failure to maintain workers compensation insurance did not cause Barcelona to slip down the stairs; instead Barcelona's fall was caused by debris left on the floor by a contractor. The fact that Louisiana requires employers to carry workers compensation insurance provided Barcelona with a cause of action against her former employers, but does not make the debtors ultimately responsible for the accident.

### B.  Failure to Disclose Creditors under §523(a)(3)

Plaintiff contends that the debtors failed to list four creditors and that this failure prejudiced Barcelona. Under §523(a)(3), a debt can be exempted from discharge if the debtor fails to list the debt on his or her bankruptcy schedules.[16] The Fifth Circuit has specified three factors that courts should consider to determine whether a debtor's failure to list a creditor requires

---

[14] *In re Chavez*, 140 B.R. 413, 419 (Bankr. W.D. Tex 1992); 3 *Collier on Bankruptcy* ¶ 523.08 at 523-46 (15th ed. 1996).
[15] BLACK'S LAW DICTIONARY (8th ed. 2004).
[16] 11 USC §523(a)(3).

that the debt owed that creditor survive discharge: 1) the reason the debtor failed to list the creditor, 2) the amount of disruption the debtor's untimely listing of the creditors will cause the court and 3) the prejudice suffered by both the listed and unlisted creditors.[17] In no-asset cases there is little likelihood of prejudice to either listed or unlisted creditors because there will be no dispersal of estate funds.[18]

Plaintiff asserts that the debtors failed to list Gulf Coast Supplies, Mark's Paper, Fine Paper, and Herbert Ink on their schedules. In their amended creditor matrix, filed on March 31, 2004, the debtors amended their schedules to include the omitted creditors, except Hebert.

Considering the first factor, the debtors stated in depositions that they failed to list the debts because they infrequently did business with the creditors and the amount of the debt was small. This explanation allows a finding that the debtors' omission of the debt was a harmless error, not an attempt to defraud creditors. Continuing to the second factor, this court has not been and will not be disrupted by the filing of amended schedules listing omitted creditors, because this is a no-asset liquidation in which none of the creditors will receive a distribution. For the same reason, none of the creditors, either listed or unlisted, were prejudiced by debtors' omission

---

[17] *In re Stone*, 10 F.3d 285, 291 (5th Cir 1994);*In re Smith*, 21 F.3d 660, 664 (5th Cir 1994).
[18] *In re Stone*, 10 F.3d at 291.

because no funds from the estate have been or will be dispersed. The plaintiff has failed to carry her burden of proof required to deny a discharge under §523(a)(3).

### C. Fraud or Defalcation by Fiduciary under §523(a)(4)

Plaintiff asserts that Louisiana Revised Statutes 23:1168, which require employers to maintain worker's compensation insurance for their employees, places employers in a fiduciary position with their employees. The plaintiff argues that the defendants participated in a fraud or defalcation by soliciting Barcelona's employment without telling her that she would be working without the worker's compensation coverage mandated by law.

Section 523(a)(4) denies a discharge of debts stemming from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[19] In order for a debt to be denied a discharge under §523(a)(4), the plaintiff must show that 1) the debtor was acting in a fiduciary capacity towards the plaintiff, 2) the debtor was involved in a fraud or defalcation involving the plaintiff, and 3) his or her debt arose from the debtor's fraud or defalcation.[20] The concept of a fiduciary under §523(a)(4) is narrow and requires a technical or express trust which existed before the act that created

---

[19] 11 USC 523(a)(4).
[20] *See In re Angelle*, 610 F.2d 1335, 1338-41 (5th Cir. 1980); *Kraemer v. Crook*, 94 B.R. 207, 208-09 (N.D. Ga. 1988); *In re Owens*, 54 B.R. 162, 164 (Bankr. S.C. 1984).

the debt.[21] Additionally, the claimed fiduciary relationship must exist before the wrongful act that gave rise to the claim occurred.[22] Under applicable Fifth Circuit jurisprudence, trusts can be created by statute if the statute creates a traditional trust structure including separate record keeping for the trust funds, a statutory scheme for the payout of such funds, a settlor, a trustee, and beneficiaries.[23]

Plaintiff relies on La R.S. 23:1168 as creating the requisite fiduciary duty needed to deny debtors' discharge under §523(a)(4). Section 1168, however, does not create a trust or trust-like qualities required by the Fifth Circuit in *In re Angelle*.[24] La. R.S. 23:1168 creates a requirement that employers maintain workers compensation insurance for their employees, but does not create either an express or statutory trust or a fiduciary relationship between the employer and employee.[25] There is no language in La. R.S. 23:1168 that indicates a legislative intent to create either a fiduciary relationship between the insuring employer and the insured employee nor a trust in which the employer is the payor and the employee is the beneficiary.

In addition, there was no fiduciary relationship between the plaintiff

---

[21] *In re Tran,* 151 F.3d 339, 342 (5th Cir. 1998)( the idea of a fiduciary under §523(a)(4) is narrower than that under the common law).
[22] *Id.*
[23] *In re Angelle*, 610 F.2d 1335,1340-41 (5th Cir. 1980); *Kraemer v. Crook*, 94 B.R. 207, 208-09 (N.D. Ga. 1988).
[24] *Id.*
[25] *See* La. R.S. 23:1168.

and debtors before the occurrence of the wrongful act that gave rise to the plaintiff's workers compensation suit. Plaintiff urges that there is a fiduciary relationship created by La. C.C. Art. 2809. However, because Article 2809 pertains to intra-partnership fiduciary responsibilities, it is inapplicable to plaintiffs' claims due to the lack of evidence received at trial to show that debtors and Barcelona were in a partnership.[26]

In *Kraemer v. Crook*, a creditor-employee attempted to exempt the debt owed to him by the employer-debtor.[27] The creditor in *Kraemer* was injured in an accident during the course and scope of his employment and won a suit against his employer for failing to maintain workers compensation insurance.[28] The employer filed for bankruptcy relief and the creditor-employee sought to deny discharge of the state court judgment under §523(a)(4).[29] The creditor-employee argued that a Georgia statute which required employers to purchase workers compensation insurance for their employees created a fiduciary duty between the employer and the employee. The district court, relying on *Angelle*, stated that the plaintiff failed to satisfy the requirements of §523(a)(4) because 1) under the Georgia statute "a cause of action does not arise until the employee is injured, there is

---

[26] *See* La. C.C. Art. 2809.
[27] *Kraemer v. Crook*, 94 B.R. 207, 208-09 (N.D. Ga. 1988).
[28] *Id.* at 207-09.
[29] *Id.* at 208.

-12-

nothing for the employer to hold in trust, as an accident or injury is only a potentiality," and 2) no fiduciary relationship existed between the plaintiff-employee and the debtor-employers.[30] The case currently before the court has the exact same failings as that in *Kraemer* and will receive the same treatment as regards the issue of §523(a)(4).

### D. Denial of Discharge Under §523(a)(6)

Section 523(a)(6) denies the discharge of debts that arise out of "willful and malicious injury by the debtor to another entity or to the property of another entity."[31] The Supreme Court has stated that the term "willful" in §523(a)(6) modifies injury and therefore "requires deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."[32] The Fifth Circuit has interpreted the term "willful and malicious injury" as a unitary concept that entails a two-pronged test.[33] An "injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm."[34] Debts arising from recklessly or negligently inflicted injuries do not fall within §523(a)(6).[35] Courts have found §523(a)(6) inapplicable when considering a

---

[30] *Id.* at 209-10.
[31] 11 USC 523(a)(6).
[32] *Kawaauhau v Geiger,* 523 US 57, 61 (1998).
[33] *In re Miller*, 156 F.3d 598 (5th Cir. 1998).
[34] *Id.* at 606.
[35] *Kawaahau v. Geiger*, 118 S,Ct. 974, 978 (1998).

plaintiff's attempt to deny discharge of a debt due to a debtor's failure to maintain statutorily required insurance which could have satisfied the plaintiff's claim.[36] These decisions have been premised on the idea that the debtor's failure to maintain such statutorily required insurance was not an act that inescapably led to the plaintiff's injury.[37]

Applying the Code and precedents to the case at bar, it is clear that the plaintiff's claim should not be exempted from discharge under §523(a)(6). The uncontested facts of the case do demonstrate that debtors knowingly violated the Louisiana law that required them to maintain workers compensation insurance. This does not mean that the debtors committed a willful and malicious injury as defined by the Fifth Circuit in *Miller*. First, there is absolutely no evidence that debtors specifically intended the injury to the plaintiff. To the contrary, Mrs. Vizzina first under cross examination and then on redirect testified that they did not intend that the plaintiff be injured and did not want the plaintiff to suffer losses. Second, turning to the objective test from *Miller* – substantial certainty to cause harm has not been demonstrated. Plaintiff must demonstrate that by failing to maintain the workers compensation insurance, debtors were aware that particularized harm would occur to Barcelona. Plaintiff has failed to demonstrate both that

---

[36] *In re Walker*, 48 F.3d 1161, 1165 (11th Cir. 1995); *In re Fields,* 203 B.R. 401, 411 (Bankr. M.D. La. 1996).
[37] *In re Walker*, 48 F.3d at 1165.

1) debtors had such knowledge, and 2) the debtors act caused the harm to Barcelona. Therefore, plaintiffs claim will not be exempted from discharge under §523(a)(6).

Cases relied upon by the plaintiff to the contrary can be distinguished.[38] The plaintiff's cases all predate the Supreme Court's decision in *Kawaahua*. Additionally, as noted in *Walker*, a finding that statutorily required worker's compensation benefits are property involves "a recasting of the 'reckless disregard' standard expressly rejected by Congress and by this Court."[39]

### IV. Conclusion

Plaintiff has not provided sufficient evidence to exempt her claim from discharge under §523(a)(2)(A), (a)(3), (a)(4), or (a)(6). Accordingly, the plaintiff's complaint will be dismissed with prejudice.

New Orleans, Louisiana, April 11, 2005.

Jerry A. Brown
U.S. Bankruptcy Judge

---

[38] *Verhelst v. Carter*, 170 B.R. 657 (Bankr. W.D. Ark. 1993)(employer knowingly led employee to believe he had insurance); *In re Saturday*, 138 B.R. 132 (Bankr.S.D. Ga. 1991)(employer had two previous workers' compensation claims he was forced to self insure due to lack of coverage); *Strauss v. Zielinski*, 86 B.R. 559 (Bankr.N.D. Ill. 1988).

[39] *Walker*, 48 F.3d at 1161.